IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JONATHAN SMITH, et al.,

    Plaintiffs,

v.      CV 208-020

GEORGIA ENERGY USA, LLC,
et al.,

    Defendants.

## ORDER

In this class action, Plaintiffs assert claims for fraud/negligent misrepresentation, negligence, money had and received, unjust enrichment, and violation of Georgia's Uniform Deceptive Trade Practices Act arising from the alleged fraudulent calibration of gasoline pumps beginning in 2005 at three filling stations in Camden County, Georgia. The Estate of Fairley Cisco, Cisco Oil, Inc., Cisco Travel Plaza, Inc., and Cisco Travel Plaza Inc., II now move the Court to decertify the plaintiff classes. As Plaintiffs do not object and the Court is satisfied that decertification is in the best interests of the named plaintiffs and other class members, the Court **GRANTS** the decertification motion. (Doc. 247.)

### I. BACKGROUND

In 2008, Plaintiffs filed this class action against sixteen defendants, comprised of three distinct groups: the "Cisco

1

Defendants" (Fairley Cisco; Althea Cisco Shave; Tammy Cisco Walker; Cisco Oil, Inc.; Cisco Travel Plaza, Inc.; and Cisco Travel Plaza, Inc. II); the "Abraham Defendants" (Biju Abraham; Georgia Energy USA, LLC; Georgia Petro USA, LLC; Georgia Petro II USA, LLC; Jack Ghazi; Global Energy USA, LLC; Kingsland Management, LLC; and Kingsland Management II, LLC), and the "Sekhon Defendants" (Kuldeep S. Sekhon and United Fuels, Inc.).

Fairley Cisco formed and owned, or had a controlling interest in, the three filling stations at issue until 2000 when he transferred ownership to his daughters, Tammy Cisco Walker and Aletha Cisco Shave. Despite this transfer, Mr. Cisco retained the roles of CEO and CFO, and he continued to manage nearly all aspects of the businesses. Mr. Cisco negotiated the sale of the stations to the Sekhon Defendants in December 2006. In early 2008, the Sekhon Defendants sold the stations to the Abraham Defendants. Mr. Sekhon and Mr. Abraham fled the jurisdiction before being served with the complaint in this action. Mr. Abraham's associated corporate entities initially answered the complaints filed against them, but are now unrepresented and have not responded to subsequent filings, including Plaintiffs' motion for summary judgment against them.

The Cisco Defendants, however, have actively defended this suit since its inception. Within weeks of filing Plaintiffs' case, however, the State of Georgia initiated a civil RICO and

2

forfeiture action in the Superior Court of Camden County, Georgia. Following the appointment of a receiver in that case, the State seized all the Cisco Defendants' available assets — totaling more than $2.5 million. The receiver retained over $1 million to pay himself and disbursed an additional $1 million to two fuel suppliers. The Cisco Defendants forfeited another $2.75 million to the State. The Brunswick Judicial Circuit District Attorney's office, who managed the RICO action, paid out approximately $50,000 in claims to the motoring public, but the plaintiff classes were not permitted to access these or any other of the forfeited funds.

In April 2010, Mr. Cisco died, leaving behind an estate with nearly no assets. In June 2011, Class Counsel initiated a second lawsuit against the Cisco Defendants in the State Court of Charlton County, Georgia on behalf of two entities that either supplied fuel to or competed against the Cisco fuel stations. Class Counsel's involvement in the Charlton County suits ultimately created an unresolvable conflict of interest that resulted in Class Counsel's disqualification in this action. (See Doc. 244.) Moreover, all the Cisco Estate's liquid assets were depleted by the substantial legal fees incurred in defending the Charlton County suits. Finally, this Court granted summary judgment in favor of Althea Cisco Shave and Tammy Cisco Walker on November 4, 2014, thereby discharging

3

from liability the only two Cisco Defendants with assets of any substance. (See Doc. 246).

Defendants therefore assert, and Plaintiffs agree, that the combined assets of all remaining defendants are insufficient to pay the administrative costs of publishing the required notices, much less any compensatory damages to the class members should Plaintiffs prevail in the end. (Defs.' Br., Doc 247, at 4-5; Pls.' Resp., Doc. 248, at 2.) Accordingly, Defendants urge the Court to order decertification as the class device no longer affords superior efficiency to this litigation or potential benefit to the litigants in light of Defendants' gross financial shortcomings.

## II. ANALYSIS

Questions concerning class certification are left to the sound discretion of the district court. See Culpepper v. Irwin Mortgage Corp., 491 F.3d 1260, 1276 (11th Cir. 2007) (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)). Thus, this Court may revisit its initial decision to certify a class in light of subsequent developments in the litigation pursuant to Federal Rule of Civil Procedure 23(c)(1)(C). Culpepper, 491 F.3d at 1276; see also Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case."); Buford

4

v. H & R Block, Inc., 168 F.R.D. 340, 346 (S.D. Ga. 1996) ("[O]ptions such as decertification or revised certification are always available to the district court."). This is especially so during the period before any notice is sent to members of the class, as class certification "is inherently tentative." Gen. Tel. Co., 457 U.S. at 160 (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 n.11 (1978)); see also Buford, 168 F.R.D. at 346 (noting that class certification is "strictly a procedural matter" as "the merits of the claims at stake are not . . . considered when determining the propriety of the class action vehicle") (citation omitted).

The Court has drawn on its well of knowledge about the long course of this litigation — in which the intervention of multiple lawsuits has had considerable detrimental effect. It also has carefully considered the costs and benefits of decertification in comparison to, at minimum, the cost of publishing the appropriate notice to the class. Moreover, in moving for decertification, it appears to the Court that counsel for the parties are working to guard the interests of the putative class members. As it is clear that no benefit will inure to the plaintiff representatives or classes in this case,[1]

---

[1] See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 567, 570 (2d Cir. 1968) (noting that courts should be "reluctant to permit actions to proceed where they are not likely to benefit anyone but the lawyers who bring them" and further stating that if "financial considerations prevent the plaintiff from furnishing individual notice to [class] members, there may prove to be no alternative other than the dismissal of the class suit").

5

and Plaintiffs concede the futility of moving forward, the Court finds decertification to be appropriate.[2]

### III. CONCLUSION

Based upon the foregoing, the Court **GRANTS** Defendants' Motion to Decertify the plaintiff classes. (Doc. 247.)

**ORDER ENTERED** at Augusta, Georgia, this  1st  day of December, 2014.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[2] Although Rule 23 authorizes the Court to provide notice of this action's change in status to absent class members, the Court finds that no notice of decertification is required here as no notice of certification was given. See Hervey v. City of Little Rock, 787 F.2d 1223, 1230 (8th Cir. 1986) (noting that "notice of the decertification is required only to the extent necessary to reach those potential class members who received notice of certification and relied on being included in the class"); Daisy Mtn. Fire Dist. v. Microsoft Corp., 547 F. Supp. 2d 475, 485 (D. Md. 2008); Seglison v. Plum Tree, Inc., 61 F.R.D. 343, 346 (E.D. Pa. 1973). But see Birmingham Steel Corp. v. Tenn. Valley Auth., 353 F.3d 1331, 1339 (11th Cir. 2003) (in decertifying a class on the ground of inadequate representation by the named plaintiff, a district court "must ensure that notification of this action be sent to the class members, in order that the latter can be alerted that the statute of limitations has begun to run again on their individual claims"); Reynolds v. Ala. Dep't of Transp., No. CV-85-T-665-N, 2012 WL 3100768, at *2 (M.D. Ala. May 1, 2012), R&R adopted, No. 2:85CV665-MHT, 2012 WL 3101283 (M.D. Ala. July 30, 2012) (citing Birmingham Steel for the proposition that those class members who submitted Participation Forms or Opt-out Forms should be provided notice of decertification, but declining to require notice be sent to those class members who did not return either form).